UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| CLARENCE DEAN ROY | CIVIL ACTION NO. 16-1018 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CITY OF MONROE AND JAMES BOOTH | MAG. JUDGE KAREN L. HAYES |

RULING

This is a civil rights action filed by Plaintiff Clarence Dean Roy ("Roy") against Defendants City of Monroe ("the City") and James Booth ("Booth"). Pending before the Court is a Motion for Summary Judgment [Doc. No. 23] filed by Defendants. For the following reasons, the Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

I.     FACTS AND PROCEDURAL HISTORY

Roy is a minister who often preaches with his followers near the intersection of Pine and Third Streets in Monroe, Louisiana. The Corner Bar, which is at that location and in close proximity to several other bars, is known as a gathering spot for homosexuals. Roy and his followers believe that homosexuality is a sin. [Doc. No. 23-3, Exh. 3, Roy Depo., p. 22, ll. 1-6]. They preach against homosexuality, as well as drinking alcohol, and other topics. *Id.* at ll. 13-14. On multiple occasions, the Monroe Police Department has been called to the area because of a situation involving Roy and his followers, both because of their statements and actions toward patrons and actions taken by others against Roy and his followers. City police officers receive training on First Amendment rights as part of their law enforcement training and are aware that people may peacefully protest as long as they are not blocking streets or public passages. [Doc. No. 23-3, Exh. 9, Jared Desadier Depo., p. 19, ll. 14-25, p. 20, l. 1; Exh. 11, Mark Johnson Depo., p. 45, ll. 10-17].

On July 17, 2015, Roy and his followers were at the same intersection. At some point, Roy asked one of his followers to call the police because someone was "putting her hands all over" another follower. [Doc. No. 23-3, Exh. 3, Roy Depo., p. 15, ll. 16-23].

The police arrived on the scene. During the time that they were investigating the incident, another person in the area, Jessica Falcon ("Falcon"), was watching the commotion while her friend, Brooke Wood ("Wood"), was talking to a police officer. Falcon then crossed the street to her parked car to retrieve something from the front passenger seat. Falcon and Wood have testified that Roy followed after Falcon hurriedly, and Falcon testified that he began calling her names like "little lesbo" and telling her that she was "going to hell," and her father was "the devil." [Doc. No. 23-3, Exh. 5, Falcon Depo., pp. 19-23; Exh. 6, Wood Depo., p. 20, ll. 21]. Falcon further testified that Roy was within a couple of feet of her car when she reached it and that she was scared by his words and the manner in which he said them. She grabbed the items she needed and hurriedly returned across the street where Wood observed her to be crying and visibly shaken up. During this time, Wood had asked the officer with whom she had been talking if they could do anything about Roy's and his followers' actions and was told she would have to file a complaint. When Falcon returned, Wood told her what the officer said, and Falcon made a complaint to Sergeant James Booth, one of the supervisors on scene. She identified the person about whom she complained as wearing an orange jump suit and then pointed out Roy.

Roy denies that he took the actions or made the statements attributed to him.

Sergeant Booth issued a summons to Roy for Disturbing the Peace. [Doc. No. 23-3, Exh. 2]. The relevant City ordinance, Sec. 12-153, provides as follows:

    (a)    It shall be unlawful to commit an act of disturbing the peace.

    (b)    Disturbing the peace is the doing of any of the following in such a manner as

would foreseeably disturb or alarm the public, or create any dangerous or violent conditions:

    (1)    Engaging in a fistic encounter; or

    (2)    Using profane or threatening language or making obscene remarks, gestures, or indecent proposals to or toward another which in the manner uttered has a tendency to incite an ordinary addressee to violent retaliatory action and a breach of the peace; or

    (3)    Appearing in an intoxicated condition; or

    (4)    Engaging in any act in a violent and tumultuous manner by any three (3) or more persons; or

    (5)    Holding of an unlawful assembly; or

    (6)    Interruption of any lawful assembly of people.

Disturbing the peace shall also include the commission of any act other than that permitted as an exercise of free speech or free assembly guaranteed by the constitutions of the United States and the State of Louisiana, in such a manner as to disturb or alarm the public, or make such a disturbance imminent, or to provoke another or other to retaliatory action or violence.
(Code 1958, § 10-27; Ord. No. 7087, 9-11-79).

Sergeant Booth's probable cause narrative stated:

On 7-17-2015 at approx 2247 hours I Sgt. Booth, was in the 500 Blk of North 3rd Street dealing with a distance. There was [sic] group of people outside Club Neat and the Connor [sic] Bar preaching at the customers. While there I was approached by Jessica N. Falcon. Jessica stated while she was crossing the street from Club neat to The Connor Bar a whi[t]e male wearing an orange jump suite [sic] car[rying] a large wooden cross Followed [sic] her across the street. Jessica stated the man called her a homosexual and because of this she was going to hell. Jessica also stated the man told her that her father was the devil. Jessica stated this offended her and it scared her the way he was following her across the street. Jessica pointed out the suspect to me. The suspected was id[ed] as Clarence D. Roy. Roy told me he was not protesting but preaching. Roy was issued a summon (27563) for disturbing the peace.

[Doc. No. 23-3, Exh. 2].

Roy denies that Sergeant Booth told him the basis for the summons.[1]

On April 11, 2016, a trial was held in Monroe City Court. The case was prosecuted by James Pierre, who interviewed Falcon and Wood prior to trial. At the conclusion of trial, Judge Jefferson Joyce found Roy not guilty, although Judge Joyce did state that he believed Roy had said the type of offensive things alleged. [Doc. No. 23-3, Exh. 1].

Roy and his followers continued their protests and preaching after this incident without interference by the Monroe Police Department.[2] However, they stopped their protests and preaching for awhile because of the instant lawsuit. [Doc. No. 23-3, Exh. 3, Roy Depo., p. 51, ll. 11-16; p. 52, ll. 17-18, 21-24].

On July 11, 2016, Roy filed suit against Defendants asserting claims that the Ordinance, on its face and as applied, violated his rights of freedom of speech and free exercise of religion under the First Amendment, as applied through the Fourteenth Amendment; that the City's Ordinance, policies, and practices violated his due process rights under the Fourteenth Amendment; that Defendants' actions constitute malicious prosecution in violation of the Fourth Amendment; and that Sergeant Booth's actions constitute false arrest in violation of the Fourth Amendment. [Doc. No. 14]. He seeks declaratory and preliminary and permanent injunctive relief,[3] an award of nominal or

---

[1] Roy admits that Sergeant Booth made some other comments to him, but he does not recall those statements. [Doc. No. 32, Exh. 15, Roy Depo., p. 33].

[2] Roy and his followers were never arrested or issued a summons because of their activities at the Third and Pine intersection. He was arrested once in 1989, although he could not recall the details, and he was given a citation when he was protesting outside a bar on Desiard one other time. [Doc. No. 23-3, Exh. 3, Roy Depo., pp. 46, 49]. However, Roy has not produced any evidence or recall any incidents in which his rights were infringed at the instant intersection, either before or after the July 2015 incident.

[3] Defendants move for summary judgment on Roy's requested declaratory and injunctive relief, citing the test applicable to claims for preliminary injunctive relief. First, the test is not

compensatory damages, and attorney's fees and costs.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is

---

applicable to his requests for declaratory and permanent injunctive relief. Second, regardless, Defendants have moved for summary judgment on the merits of each of Roy's causes of action. Accordingly, the Court need not determine whether he has a substantial likelihood of success on the merits for purposes of preliminary injunctive relief when it will address the actual merits of his claims. The Court would note, however, that the request for preliminary injunctive relief will be mooted by trial in this matter.

appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

**B.    Civil Rights Claims**

Roy has brought a number of civil rights claims pursuant to 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003). "To state a claim under 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A "person" under § 1983 may include a government entity if liability is premised on a policy or custom that caused the alleged constitutional deprivations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Board of Cnty. Comm'nrs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 n. 10 (5th Cir. 2000). An official capacity suit against an official is the equivalent of a suit against the entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985); *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991); *McMillian v. Monroe Cnty., Ala.,* 520 U.S. 781, 784-85, (1997)[4]; *Burge v. St.*

---

[4]As the Supreme Court explained,

> a suit against a governmental officer "in his official capacity" is the same as a suit "'against [the] entity of which [the] officer is an agent,'" *Kentucky. . .* , 473 U.S. . . . [at] 165 . . . (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n. 55 . . .(1978) and that victory in such an "official-capacity" suit "imposes liability on the entity that [the officer] represents," *Brandon . . . ,* 469 U.S. . . . [at] 471 . . . .

*McMillian,* 520 U.S. at 785 n. 2.

6

*Tammany Parish,* 187 F.3d 452, 466 (5th Cir. 1999).

In this case, Roy contends that Defendants, acting under color of state law, enacted and applied the Ordinance, which is unconstitutional both on its face and as applied. Roy asserts that Defendants' actions violated his rights under the First, Fourth, and Fourteenth Amendments.

### 1. Freedom of Speech and Free Exercise of Religion under the First Amendment

The First Amendment provides Roy a right to freedom of speech and the right to free exercise of religious expression. *See McDaniel v. Paty*, 435 U.S. 618, 625 (1978) (religious expression); *Snyder v. Phelps*, 562 U.S. 443, 453-55 (2011) (after examining content, form, and context, Supreme Court found that First Amendment protection on free speech included religious group's protest on homosexuality as a matter of public concern).

In his first four causes of action, Roy argues that the Ordinance, on its face and as applied, violated his First Amendment Freedom of Speech and Free Exercise of Religion rights. To determine whether a governmental restriction on speech violates the First Amendment, the Court must first determine whether the restriction was content-based, to which the strict scrutiny test applies, or content-neutral, to which the intermediate scrutiny test applies. *World Wide Street Preachers Fellowship v. Town of Columbia,* 245 Fed. App'x. 336, 344, 2007 WL 1655304, at *6 (5th Cir. 2007).

> The principal inquiry in determining whether a restriction is content-based or content-neutral, and thus whether strict or intermediate scrutiny should be applied, is whether the government has adopted the restriction of speech because of the government's disagreement with the message conveyed. *Id.* at 791, 109 S.Ct. 2746. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* (holding a regulation is content-neutral as long as it is justified without reference to the content of the regulated speech). . .
>
> The constitutional tests for whether governmental action unconstitutionally

infringes on the free exercise of religion and freedom of assembly are similarly dependent on whether the restriction was motivated by the nature of the conduct that is restricted. With respect to the free exercise of religion, if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). In other words, a restriction of religious practices because of their religious nature must survive strict scrutiny. *See id.* at 546, 113 S.Ct. 2217. However, a law that is neutral and of general applicability need not be justified by a compelling governmental interest, even if that law has the incidental effect of burdening a particular religious practice. *Id.* at 531, 113 S.Ct. 2217. Thus, the motivation for the restriction on the exercise of religion must be established before the restriction can be legally analyzed.

. . .

Given the above tests . . ., it is clear that the motivation for the restriction at issue is key to determining which constitutional standard should be applied.

*Id.* at 344-45, 2007 WL 1655304, at *5-6.

### a. Facial Challenge

First, Roy brings a facial challenge to the Ordinance, arguing that it is unconstitutionally vague and overly broad.[5] A facial challenge to the constitutionality of an ordinance presents a pure question of law. *Center for Individual Freedom v. Carmouche*, 449 F.3d 655 (5th Cir.2006).

The current version of the Ordinance addressing disturbances of the peace was enacted many years ago prior to Roy's activities. Further, Roy and his followers have demonstrated at the same intersection on many occasions without application of the Ordinance to their activities or speech. There is no evidence that the language of the Ordinance was ever modified in some way to restrict Roy's speech or infringe on his practices or those of any other protesters. Finally, a review of the language of the Ordinance itself shows that it is content-neutral and of general applicability.

---

[5]An ordinance is vague if it "fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." *City of Chicago v. Morales*, 527 U.S. 41 (1999). An ordinance is overly broad "if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *Id.*

8

When an ordinance is content neutral, the governmental entity need only show that (1) the restriction was within its constitutional power, (2) that the restriction furthers an important or substantial government interest, (3) the governmental interest is unrelated to restriction of constitutional rights at issue, and (4) the incidental restrictions on First Amendment freedoms is no greater than is essential to the furtherance of that interest. *Id.* at 343, 2007 WL at *5. The Ordinance states that "[d]isturbing the peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public, or create any dangerous or violent conditions," including the "[u]sing profane or threatening language or making obscene remarks, gestures, or indecent proposals to or toward another which in the manner uttered has a tendency to incite an ordinary addressee to violent retaliatory action and a breach of the peace." Monroe City Code § 12-153. "The doctrines of overbreadth and vagueness apply to laws as construed by state courts-or as easily susceptible to construction by those courts-not as written." *Netherland v. Eubanks*, 302 F. App'x 244, 247 (5th Cir. 2008)(citing *Osborne v. Ohio*, 495 U.S. 103, 119-20 (1990)).

Defendants argue that the Ordinance is almost identical to the Louisiana statute criminalizing disturbances of the peace, La. Rev. Stat. 14:103[6] and that they both make the

---

[6]The statute provides as follows:

A. Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:

(1) Engaging in a fistic encounter; or

(2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty; or

(3) Appearing in an intoxicated condition; or

9

addressing of offensive language to a particular individual in a manner designed to incite.

While this Court would not characterize the Ordinance as "nearly identical" to the state statute, it is similar. Further, that part of the statute which **is** identical "has been given a limiting

---

(4) Engaging in any act in a violent and tumultuous manner by any three or more persons; or

(5) Holding of an unlawful assembly; or

(6) Interruption of any lawful assembly of people; or

(7) Intentionally engaging in any act or any utterance, gesture, or display designed to disrupt a funeral, funeral route, or burial of a deceased person during the period beginning one hundred twenty minutes before and ending one hundred twenty minutes after the funeral or burial, within three hundred feet of the funeral or burial.

(8)(a) Intentionally blocking, impeding, inhibiting, or in any other manner obstructing or interfering with a funeral route.

(b) Intentionally blocking, impeding, inhibiting, or in any other manner obstructing or interfering, within five hundred feet, with access into or from any building or parking lot of a building in which a funeral or burial is being conducted, or any burial plot or the parking lot of the cemetery in which a funeral or burial is being conducted, during the period beginning one hundred twenty minutes before and ending one hundred twenty minutes after the funeral or burial.

B. (1) Whoever commits the crime of disturbing the peace shall be fined not more than one hundred dollars or imprisoned for not more than ninety days, or both.

(2) Whoever commits the crime of disturbing the peace as provided for in Paragraphs (A)(7) and (8) of this Section shall be fined not more than five hundred dollars or imprisoned for not more than six months, or both.

C. For purposes of Paragraphs (A)(7) and (8) of this Section:
(1) "Funeral" includes a funeral, funeral home viewing, wake, or memorial service.
(2) "Funeral route" means the route of ingress or egress from the location of a funeral or burial, including thirty feet from the outer edge of the outside lane of the route.

La. Rev. Stat. § 14:103

construction by the Louisiana Supreme Court." 302 Fed. App'x at 247 (citing *State v. Jordan*, 369 So.2d 1347, 1350 (La. 1979)). In *Jordan*, the Louisiana Supreme Court interpreted the phrase "in such a manner as would foreseeably disturb or alarm the public," found both in the state statute and the then-applicable Monroe City Code, to apply only to "'conduct which is violent or boisterous in itself, or which is provocative in the sense that it induces a foreseeable physical disturbance.'" 369 So.2d at 1350 (quoting *Garner v. Louisiana*, 368 U.S. 157, 166-67 (1961)); *see also State v. Heck*, 307 So.2d 332 (La.1975).

Moreover, the current version of the Ordinance contains the same limiting language and "does no more than prohibit the face-to-face words plainly likely to cause a breach of the peace by the addressee, words whose speaking constitute a breach of the peace by the speaker—including 'classical fighting words,' words in current use less 'classical' but equally likely to cause violence, and other disorderly words, including profanity, obscenity and threats.'" *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 573 (1942). The Court finds that the Ordinance is a content-neutral restriction that was within the authority of the Monroe City Council to enact, the Ordinance furthers an important or substantial government interest of preventing a breach of the peace, that the interest is unrelated to a restriction of constitutional rights, and the incidental restrictions on First Amendment freedoms is no greater than is essential to the furtherance of that interest. To the extent that Roy asserts a facial challenge to the Ordinance as violating his First Amendment speech and free exercise rights, Defendants' Motion for Summary Judgment is GRANTED, and Roy's facial challenge s are DISMISSED WITH PREJUDICE.

      **b.**      **As Applied Challenge**

Even though the Ordinance survived a facial challenge, Roy may still raise a genuine issue

of material fact for trial that Sergeant Booth's application of the Ordinance on July 17, 2015, to him was an unconstitutional violation of his First Amendment rights.

Any determination as to whether Roy's First Amendment rights were infringed by the application of the Ordinance at issue is a mixed question of law and fact. *Baby Dolls Topless Saloons, Inc. v. City of Dallas*, 295 F.3d 471 (5th Cir. 2002). Viewing the facts in the light most favorable to Roy, the Court considers the following:

(1) Falcon raised specific allegations against Roy's conduct and statements to her, all of which were significantly related to his religious beliefs;

(2) Roy denies making the statements or taking the actions alleged by Falcon;

(3) No one besides Falcon and Roy actually heard their conversation;

(4) Sergeant Booth undertook no investigation[7] other than speaking with Falcon.

(5) There was a long history of demonstrations at this intersection.

(6) On the night in question, complaints by both Roy and his followers and customers of the bars had been handled by the Monroe Police Department.

(7) Based on the same set of facts presented, Judge Joyce determined that the City failed to prove a violation of the Ordinance.

In essence, the validity of Roy's First Amendment as-applied claim "hinges on probable cause for [his] [summons]—a fact question for the jury." *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008). Accordingly, this claim cannot be resolved on summary judgment. *Id.* If Sergeant Booth had probable cause to arrest Roy under § 12:153, "there could be no First Amendment violation." *Id.* However, if a jury finds there was no probable cause for Roy's arrest, his First Amendment claim may be considered as well. *Id.*; *see also Enlow v. Tishomingo County, Miss.*, 962 F.2d 501, 509–10

---

[7] He testifies that Roy did not "deny" the allegations at the time, but Roy did not admit the allegations and currently denies that he was involved.

(5th Cir. 1992); *Massey v. Wharton*, 477 F. App'x 256, 263–64 (5th Cir. 2012).

Under these circumstances, the Court finds there is a genuine issue of material fact for trial whether Sergeant Booth breached Roy's First Amendment rights by issuing him a summons.

However, the Court has also considered whether Sergeant Booth's actions were protected under qualified immunity. When an officer argues that he is entitled to qualified immunity from suit, we first view the evidence "in the light most favorable to the party asserting the injury" and decide if "the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If that view reveals no constitutional violation, there is no claim. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* For immunity to apply, the "actions of the officer must be objectively reasonable under the circumstances, such that a reasonably competent officer would not have known his actions violated then-existing clearly established law." *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 688 (5th Cir. 2003).

There is no doubt that it was clearly established in July 2015 that "[a]n arrest [or a criminal summons] is unlawful unless it is supported by probable cause." *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004); *see Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994). An officer's conduct is objectively reasonable "if a reasonable person in their position could have believed he had probable cause to arrest." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). In this case, the Court finds that there are genuine issues of material facts as to the basis of probable cause to arrest Roy under the Ordinance. Therefore, Defendants are not entitled to summary

13

judgment on the qualified immunity defense.

      **C.     Due Process under the Fourteenth Amendment**

Roy also contends that the City's Ordinance, policies and practices, and failure to adequately train and supervise its officials, agents, and employees resulted in the adoption and/or enforcement of a vague law which unconstitutionally abridged Roy's rights and those of the general public to Due Process under the Fourteenth Amendment.

First, to the extent that Roy asserts a "void for vagueness" challenge to the Ordinance under the Fourteenth Amendment, the Court has found that the Ordinance is facially constitutional.

However, assuming without deciding that Roy could assert a Due Process violation based on the issuance of a summons without probable cause, the Court must make further inquiry. "Proper analysis requires us to separate two different issues when a section 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the City is responsible for that violation." *In Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). As discussed above, the Court has found a genuine issue of material fact for trial whether Sergeant Booth's actions in application of the Ordinance violated Roy's First Amendment rights. Nevertheless, to proceed against the City, Roy must also raise a genuine issue of material fact for trial whether the City is responsible for the alleged violation. Under the Fourteenth Amendment Due Process claims, Roy cannot rely on respondeat superior or vicarious liability principles. Rather, he must show that his constitutional injury–in this case a Due Process violation--was the result of official policy, custom, or the act of an official policy maker. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978); *see also Williams v. Kaufman County*, 352 F.3d 994, 1013 (5th Cir. 2003) ("The law is well-established that a municipality . . . can be held liable for its policies and customs

that engender constitutional deprivation, but that it cannot be held liable for the actions of its non-policy-making employees under a theory of respondeat superior.").

"Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

There are three ways in which Roy could meet his burden: (1) officially adopted municipal policy or custom; (2) a practice that, though not officially adopted, is so widespread as to fairly represent municipal policy or custom; and (3) the single incident exception. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (official policy and widespread practice); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ("where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."); *see also Brown v. Bryan Cnty.*, 219 F.3d 450, 461 (5th Cir.2000) (quoting *Bd. of Cnty. Comm's of Bryan Cnty. v. Brown*, 520 U.S. 397, 412, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

With regard to the first method, the Court has found, as a matter of law, that the Ordinance was constitutional on its face, and, therefore, Roy cannot meet his burden under this method.

Under the second method, the "persistent, widespread practice" must be "so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Webster v. City of Houston*, 735

15

F.2d 838, 841 (5th Cir. 1984) (en banc); *see also Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.") (citing *Monell*, 436 U.S. at 690-91) (other citations omitted); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("Relying on the language of § 1983, the Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law. . . . That principle, which has not been affected by *Monell* or subsequent cases, ensures that most deliberate municipal evasions of the Constitution will be sharply limited.") (citations and internal quotation marks omitted); *cf. Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987) (Proof of random acts or isolated events are insufficient to establish custom.).

However, the evidence in this case shows otherwise: Roy and his followers regularly protested at the same intersection and were not subject to harassment, threats of arrest, actually arrested, or summonsed prior to the incident in question. Therefore, Roy has failed to raise a genuine issue of material fact for trial as to the second method.

Finally, the third method, the single incident exception, is very narrow. *See Bryan Cty. v. Brown,* 520 U.S. 397 (1997). "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which the County may be liable." *Brown v. Bryan Cty., OK*, 219 F.3d 450, 452 (5th Cir. 2000). To rely on this exception, a plaintiff must prove that the "highly predictable" consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the "moving force" behind the constitutional violation. *Id.* at 461.

16

"Even within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish. *Anderson v. Marshall Cty., Miss.*, 637 F. App'x 127, 134 (5th Cir. 2016) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "To successfully prove failure to train, [Roy] must prove (1) that [the City] failed to train [Sergeant Booth]; (2) that this training failure directly caused [Roy's] injuries; and (3) that [the City] displayed deliberate indifference in adopting those inadequate training polices." *Id.*

> In *Brown*, the sheriff hired as a deputy one of his relatives who had multiple prior arrests and convictions for violent crimes and other reckless behavior, as well as an outstanding arrest warrant. The deputy received no training whatsoever, and, without any provocation, he used a violent "arm bar" technique to take down an unarmed suspect. Further, the deputy had been involved in a significant number of "takedown" arrests.

*Roberts v. City of Shreveport*, 397 F.3d 287, 295–96 (5th Cir. 2005). The deputy's actions resulted in severe knee injuries to the suspect. *Brown,* 219 F.3d at 454. The sheriff also failed to provide supervision for its reserve deputies. *Id.* at 456. Under these specific circumstances, the Fifth Circuit found that the district court properly upheld the jury's verdict against the county.

However, in the instant case, the undisputed evidence, including the depositions of the Chief of Police, Sergeant Booth, and the former training officer for the City, shows that officers were trained on the rights of Roy and his followers to preach or protest under the First Amendment. Not only was Sergeant Booth a supervisor at the time of the incident, but he was present with several other officers. There is no evidence that Sergeant Booth had previously been involved in any cases involving the alleged improper application of the Ordinance to Roy or his followers or persons engaged in like conduct. Thus, Roy has not raised a genuine issue of material fact for trial on municipal liability under the third method either.

Accordingly, the Court finds that Roy has failed to raise a genuine issue of material fact for trial on the City's municipal liability under *Monell* for violations of his Fourteenth Amendment rights. Defendants' Motion for Summary Judgment on this claim is GRANTED, and the claim is DISMISSED WITH PREJUDICE.

### D. Malicious Prosecution

Defendants also move for summary judgment on Roy's claim of malicious prosecution in violation of the Fourth Amendment.

> In *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir.2003) (en banc), we held that "no ... freestanding constitutional right to be free from malicious prosecution exists." *Id.* at 945; *see id.* at 953 ("[C]ausing charges to be filed without probable cause will not without more violate the Constitution. So defined, the assertion of malicious prosecution states no constitutional claim."). We explained, however, that "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued." *Id*. at 953.

*Whittington v. Maxwell*, 455 F. App'x 450, 457 (5th Cir. 2011).

In this case, according to his Amendment Complaint and the briefs, Roy relies only on the Fourth Amendment to support his malicious prosecution claim, but he was not subject to search or seizure. He was not placed under arrest, but was issued a summons, and when he appeared at court, he was acquitted of the charges against him.

Under these circumstances, Roy's malicious prosecution appears to fail as a matter of law. However, Defendants did not cite the basis relied upon by the Court in its analysis. Therefore, the Court gives notice *sua sponte*, of its intent to dismiss Roy's malicious prosecution claim. If the parties wish to respond to the Court's stated intent, they must do so no later than October 30, 2017.

### E. False Arrest

Finally, Defendants move for summary judgment on Roy's claim that Sergeant Booth's actions amounted to false arrest, unlawfully depriving him of his Fourth Amendment rights against the deprivation of liberty and unreasonable seizures.

However, Roy was not deprived of liberty or subjected to an unreasonable seizure. The Fifth Circuit has not addressed this issue,[8] but the Court finds persuasive authority from other jurisdictions indicating that Roy suffered no deprivation from the summons issued to him in this case. Under § 1983, "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure [for purposes of establishing a false arrest claim]." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010); *see also Primrose v. Mellott*, No. CIV .A. 1:11–00835, 2012 WL 2321384, at *3 (M. D.Pa. June 19, 2012) (citing *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir.1998) ("Plaintiff's false arrest claims fail as a matter of law to the extent that they are based on the issuance of the summons for [simple assault and harassment].");  *Colbert v. Angstadt*, 169 F.Supp.2d 352, 358–59 (E.D.Pa.2001) (holding that a plaintiff could not establish a false arrest claim where he was not formally arrested but received a summons by mail, instructing him to appear in court on a particular date);*Wheeler v. Wheeler*, No. 3:14-CV-00432, 2015 WL 1286037, at *5 (M.D. Pa. Mar. 20, 2015) (granting defendant's motion to dismiss where the amended complaint failed to plead facts demonstrating a

---

[8]In *Nesmith v. Taylor*, 715 F.2d 194, 196 (5th Cir. 1983), the Fifth Circuit held that the plaintiff suffered no deprivation of rights where he was issued a summons on both valid and invalid grounds, given the fact that he was "under a legitimate compulsion to appear." However, the Fifth Circuit specifically declined to address other issues, including " whether a summons backed by threat of arrest could ever constitute a deprivation of liberty or a seizure. " *Id.*

19

plausible false arrest claim under the Fourth Amendment); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A]ll of the compensable damages in a successful false arrest claim stem from injuries associated with the detention itself, and not with the individual charges.").

In this case, Roy was not arrested, detained, seized, nor did he have his property seized. A summons alone does not amount to a Fourth Amendment seizure. *Britton v. Maloney*, 196 F.3d 24, 30 (1st Cir. 1999). However, Defendants did not cite the basis relied upon by the Court in its analysis. Therefore, the Court gives notice *sua sponte*, of its intent to dismiss Roy's false arrest claim. If the parties wish to respond to the Court's stated intent, they must do so no later than October 30, 2017.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 23] is GRANTED IN PART and DENIED IN PART. To the extent that Defendants move for summary judgment on the facial constitutionality of the Ordinance and the municipal claim against the City, the motion is GRANTED, and those claims are DISMISSED WITH PREJUDICE. The motion is otherwise DENIED. However, the Court has given notice of its intent to dismiss Roy's claims of false arrest and malicious prosecution against Defendants based on its *sua sponte* analysis. If the parties wish to respond to the Court's stated intent, they must do so no later than October 30, 2017.

MONROE, LOUISIANA, this 19th day of October, 2017.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE