# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

**CLARENCE DEAN ROY**                    **CIVIL ACTION NO. 16-1018**

**VERSUS**                               **JUDGE TERRY A. DOUGHTY**

**CITY OF MONROE AND JAMES BOOTH**       **MAG. JUDGE KAREN L. HAYES**

## RULING

This is a civil rights action filed by Plaintiff Clarence Dean Roy ("Roy") against Defendants City of Monroe ("the City") and James Booth ("Booth"). The case is set for a jury trial on August 27, 2018. On May 7, 2018, Defendants filed a pre-trial memorandum [Doc. No. 51] on contested issues of law. Defendants contend that, as a matter of law, Sergeant Booth is entitled to qualified immunity.[1] Roy also filed a pre-trial memorandum [Doc. No. 55]. Defendants filed a reply memorandum [Doc. No. 56]. Finally, pursuant to the Court's July 23, 2018 minute entry [Doc. No. 57], Roy filed a supplemental pre-trial memorandum [Doc. No. 58] addressing qualified immunity.

For the following reasons, Defendants' motion for reconsideration on the qualified immunity defense, set forth in its Pre-Trial Memoranda [Doc. Nos. 51 & 56] is GRANTED, and Roy's claim for damages against Booth is DISMISSED WITH PREJUDICE on the basis of qualified immunity.

## I.      FACTS AND PROCEDURAL HISTORY

The City's public streets, public sidewalks, and public rights-of-way are traditional public

---

[1]Defendants also argue that Roy is not entitled to injunctive or declaratory relief, but this Court's ruling addresses only qualified immunity and reserve the remaining claims for trial.

forums.

Roy is a minister who has often preached with his followers near the intersection of Pine and Third Streets in Monroe, Louisiana. He intends to continue to engage in expressive activity, including expressing religious, political, and social speech, within the City's public streets, public sidewalks, and public right-of-ways.

The City adopted the City of Monroe Code ("the Code"), which contains the City's Charter and the general ordinances of the City. The Code states in Sec. 12-153:

(a)     It shall be unlawful to commit an act of disturbing the peace.

(b)     Disturbing the peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public, or create any dangerous or violent conditions:

     (1)     Engaging in a fistic encounter; or

     (2)     Using profane or threatening language or making obscene remarks, gestures, or indecent proposals to or toward another which in the manner uttered has a tendency to incite an ordinary addressee to violent retaliatory action and a breach of the peace; or

     (3)     Appearing in an intoxicated condition; or

     (4)     Engaging in any act in a violent and tumultuous manner by any three (3) or more persons; or

     (5)     Holding of an unlawful assembly; or

     (6)     Interruption of any lawful assembly of people.

Disturbing the peace shall also include the commission of any act other than that permitted as an exercise of free speech or free assembly guaranteed by the constitutions of the United States and the State of Louisiana, in such a manner as to disturb or alarm the public, or make such a disturbance imminent, or to provoke another or other to retaliatory action or violence.
(Code 1958, § 10-27; Ord. No. 7087, 9-11-79).

On July 15, 2017, Roy and others were present in the area of north Third Street, between Pine and Olive Street. There were three commercial establishments in that area: Corner Bar; Club

Neat; and Live Oaks Ballroom and Lounge.

The Corner Bar is known as a gathering spot for homosexuals. Roy believes that homosexuality is a sin. [Doc. No. 23-3, Exh. 3, Roy Depo., p. 22, ll. 1-6]. He preaches against homosexuality, as well as drinking alcohol, and other topics. *Id.* at ll. 13-14. Roy and others with him were engaged in expressive activity by speaking about religious, political, and social issues while on the City's sidewalks. At various times, Roy was carrying a cross while on the public sidewalk.

While Roy and others were in this area, the Monroe Police Department received a complaint about a disturbance in the area of north Third Street between Pine and Olive Streets. The complaint was related to an alleged incident between the owner of the Corner Bar and one of the people with Roy.

Several Monroe Police Department officers responded to the complaint. After more than four Monroe Police Department officers had already arrived, Sergeant Booth arrived at the scene of the complaint. Sergeant Booth parked his patrol cruiser in front of Corner Bar, parallel to the front entrance, facing south.

During the time that the Monroe Police Department were investigating the complaint, a patron at one of the commercial establishments, Jessica Falcon ("Falcon"), crossed the street to her parked car to retrieve something from the front passenger seat. Her car was parked across the street from the Corner Bar and parallel to Sergeant Booth's patrol cruiser.

Falcon subsequently approached Sergeant Booth and made a complaint about Roy.

Sergeant Booth prepared a probable cause narrative which described his encounter with Falcon and Roy. The probable cause narrative states:

> On 7-17-2015 at approx 2247 hours I Sgt. Booth, was in the 500 Blk of North 3rd Street dealing with a distance. There was [sic] group of people outside Club Neat

and the Connor[2] Bar preaching at the customers. While there I was approached by Jessica N. Falcon. Jessica stated while she was crossing the street from Club neat to The Connor Bar a whi[t]e male wearing an orange jump suite [sic] car[rying] a large wooden cross Followed [sic] her across the street. Jessica stated the man called her a homosexual and because of this she was going to hell. Jessica also stated the man told her that her father was the devil. Jessica stated this offended her and it scared her the way he was following her across the street. Jessica pointed out the suspect to me. The suspected was id[ed] as Clarence D. Roy. Roy told me he was not protesting but preaching. Roy was issued a summon (27563) for disturbing the peace.

[Doc. No. 23-3, Exh. 2].

While Sergeant Booth was on the scene, Roy remained in roughly the same area near the front of a detail shop next to the Corner Bar, which was directly in front of Sergeant Booth's patrol cruiser, until Sergeant Booth called him over to discuss the complaint. Sergeant Booth only spoke with Falcon and Roy about Falcon's complaint and did not see the encounter himself.

No other officer saw the encounter either.

Sergeant Booth issued a summons and citation to Roy for allegedly violating Section 12-153, Disturbing the Peace ("the Ordinance"). Specifically, Sergeant Booth cited Clarence Dean Roy for violations of Section 12-153(b)(2), which prohibits "[u]sing profane or threatening language or making obscene remarks, gestures, or indecent proposals to or toward another which in the manner uttered has a tendency to incite an ordinary addressee to violent retaliatory action and a breach of the peace," and the "catch all" provision of Section 12-153, which indicates that disturbing the peace "include[s] the commission of any act other than that permitted as an exercise of free speech or free assembly guaranteed by the constitutions of the United States and the State of Louisiana, in such a manner as to disturb or alarm the public, or make such a disturbance imminent, or to provoke another or other to retaliatory action or violence."

---

[2]The "Connor" bar refers to the Corner Bar.

Prior to July 17, 2015, on other occasions, individuals had complained to Monroe Police Department officers about Roy and others with him.   Officers had also responded to calls in this area related to Roy and others with him, but no formal complaints were ever lodged with Sergeant Booth before this date.   Sergeant Booth had never cited Roy for any offense prior to this date.

Roy was indicted by Bill of Information for violation of the Ordinance in Monroe City Court on July 22, 2015.   On April 11, 2016, following a bench trial, Roy was found not guilty.

Roy and his followers continued their protests and preaching after this incident without interference by the Monroe Police Department.[3]   However, they stopped their protests and preaching for a while because of the instant lawsuit. [Doc. No. 23-3, Exh. 3, Roy Depo., p. 51, ll. 11-16; p. 52, ll. 17-18, 21-24].

On July 11, 2016, Roy filed suit against Defendants asserting claims that the Ordinance, on its face and as applied, violated his rights of freedom of speech and free exercise of religion under the First Amendment, as applied through the Fourteenth Amendment; that the City's Ordinance, policies, and practices violated his due process rights under the Fourteenth Amendment; that Defendants' actions constitute malicious prosecution in violation of the Fourth Amendment; and that Sergeant Booth's actions constitute false arrest in violation of the Fourth Amendment. [Doc. No. 14].   He seeks declaratory and preliminary and permanent injunctive relief, an award of nominal or compensatory damages, and attorney's fees and costs.

---

[3]Roy and his followers were never arrested or issued a summons because of their activities at the Third and Pine Streets intersection.   He was arrested once in 1989, although he could not recall the details, and he was given a citation when he was protesting outside a bar on Desiard Street, an entirely different location, one other time. [Doc. No. 23-3, Exh. 3, Roy Depo., pp. 46, 49].   However, Roy has not produced any evidence or recalled any incidents in which his rights were infringed at the instant intersection, either before or after the July 2015 incident.

On October 19, 2017, Judge Robert G. James, then presiding, issued a Ruling and Judgment [Doc. Nos. 33 & 34] granting in part and denying in part Defendants' Motion for Summary Judgment. In its Ruling, the Court found that Roy has failed to raise a genuine issue of material fact for trial on his claims (1) that the Ordinance, on its face, violated his rights of freedom of speech and free exercise of religion under the First Amendment, as applied through the Fourteenth Amendment; and (2) that the City's Ordinance, policies, and practices violated his due process rights under the Fourteenth Amendment. The Court thus dismissed Roy's claim that the Ordinance is unconstitutional on its face and his municipal claim against the City. The Court further gave notice of its intent to dismiss Roy's claims of malicious prosecution and false arrest in violation of the Fourth Amendment. After the notice period and further briefing, the Court issued another Ruling and Judgment [Doc. Nos. 37 & 38] dismissing these claims as well.

The Court left pending for trial Roy's claims against Sergeant Booth in his individual capacity, his claims for declaratory and preliminary and permanent injunctive relief, and his claim for attorney's fees and costs.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

While the Federal Rules of Civil Procedure do not recognize a motion for reconsideration per se, a motion challenging an interlocutory order or judgment may be filed under Rule 54. Rule 54(b) provides that any "order or other decision . . . that adjudicates fewer than all the claims.

. . [among] all the parties. . . may be revised at any time before the entry of a [final] judgment." FED. R. CIV. P. 54(b); *see also Calpetco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414 (5th Cir. 1993).

## B.  First Amendment and Qualified Immunity

The First Amendment provides Roy a right to freedom of speech and the right to free exercise of religious expression. *See McDaniel v. Paty*, 435 U.S. 618, 625 (1978) (religious expression); *Snyder v. Phelps*, 562 U.S. 443, 453-55 (2011) (after examining content, form, and context, Supreme Court found that First Amendment protection on free speech included religious group's protest on homosexuality as a matter of public concern). "[T]he First Amendment is violated in 'ordinary citizen' cases if the individual engaged in conduct protected by the First Amendment and the government took action against the person because of that protected conduct." *Kinney v. Weaver*, 367 F.3d 337, 358 (5th Cir. 2004) (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir. 1996)).

In ruling on Defendants' previously filed motion for summary judgment, the Court found that Roy raised a genuine issue of material fact for trial whether the City's disturbing the peace ordinance, as applied by Sergeant Booth on July 17, 2015, was an unconstitutional violation of Roy's First Amendment rights. The Court found a genuine issue of material fact for trial whether Sergeant Booth had probable cause to issue the summons and citation to Roy for disturbing the peace.

However, Sergeant Booth raised the defense of qualified immunity, which may apply to Roy's claims against Sergeant Booth in his personal capacity. *See Harlow. Malley v. Briggs*, 475 U.S. 335 (1986). "Qualified immunity . . . 'is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Sorey v. Kellett*, 849 F.2d 960, 961 (5th Cir. 1988) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2816 (1985)). As this Court previously explained,

> When an officer argues that he is entitled to qualified immunity from suit, we first view the evidence "in the light most favorable to the party asserting the injury" and

decide if "the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If that view reveals no constitutional violation, there is no claim. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* For immunity to apply, the "actions of the officer must be objectively reasonable under the circumstances, such that a reasonably competent officer would not have known his actions violated then-existing clearly established law." *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 688 (5th Cir. 2003).

[Doc. No. 33, p. 13]. "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). Roy must establish that Sergeant Booth's allegedly wrongful conduct in issuing a summons and citation to him violated clearly established law, with the focus on the objective reasonableness of his acts. *See Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

In its original Ruling, the Court determined that there are genuine issues of material fact for trial as to whether Roy suffered a violation of his First Amendment rights. The Court does not reconsider that ruling. Rather, the Court's analysis in this Ruling is limited to a reconsideration of the second prong of the qualified immunity analysis: whether the rights that were allegedly violated were "clearly established."

The Court previously considered this prong of the defense, finding:

There is no doubt that it was clearly established in July 2015 that "[a]n arrest [or a criminal summons] is unlawful unless it is supported by probable cause." *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004); *see Blackwell v. Barton,* 34 F.3d 298, 303 (5th Cir. 1994). An officer's conduct is objectively reasonable "if a reasonable person in their position could have believed he had probable cause to arrest." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). In this case, the Court finds that there are genuine issues of material facts as to the basis of probable cause to arrest Roy under the Ordinance. Therefore, Defendants

are not entitled to summary judgment on the qualified immunity defense.

[Doc. No. 33, pp. 13-14].    However, in *Wesby*, the Supreme Court cautioned that

> "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing' " is unlawful. [*Ashcroft v.*]*al-Kidd*, [563 U.S.] at 741, 131 S.Ct. 2074 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate."    *al–Kidd, supra*, at 741, 131 S.Ct. 2074. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam ), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*[*v. Howards*], 566 U.S. [658], . . .666, 132 S.Ct. 2088 [(2012)]. Otherwise, the rule is not one that "every reasonable official" would know.    *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

138 S. Ct. at 589–90.    The Supreme Court has "repeatedly stressed" that the clearly established law must not be defined at "'a high level of generality.'" *Id.*at 590 (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (other internal citations and quotation marks omitted)).

Roy contends that Defendants "conflate" First Amendment and Fourth Amendment cases in its analysis of qualified immunity.    [Doc. No. 59, p. 2].    However, the government action that allegedly resulted in the interference with or denial of Roy's First Amendment free speech and free exercise of religion rights **is** Sergeant Booth's issuance of a summons and citation to Roy. Therefore, while not a Fourth Amendment case, both First Amendment cases and Fourth Amendment cases, including *Wesby,* properly inform the Court's analysis herein.    Applying

Supreme Court and Fifth Circuit precedent, after a review of *Wesby*, the Court finds its original statement of the clearly established right to be too general. Instead, under the relevant case law, the Court must consider whether there was a "sufficiently clear foundation" for Sergeant Booth to know that his issuance of a summons and citation in this case would constitute a violate of Roy's First Amendment rights to be free from an allegedly retaliatory summons. Thus, even if there are factual issues as to whether there was probable cause to summons and cite Roy, the Court must still consider whether it was clearly established that Sergeant Booth could not summons or cite Roy. *See Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002).

In *Keenan*, the Fifth Circuit explained that, under its prior precedent, "government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable." *Id.* However, the prior precedent did not address the issue facing the Keenan court: "a situation in which law enforcement officers might have a motive to retaliate but there was also ground to charge criminal conduct against the citizen they disliked." *Id.* Under those circumstances, the "test for qualified immunity . . . involves, though it does not end with, the question of probable cause." *Id.* "If no reasonable police officer could have believed that probable cause existed for the law enforcement actions of [in this case, Booth], then [his alleged] retaliation violated clearly established law in this circuit. . . . If probable cause existed, however, **or if reasonable police officers could believe probable cause existed**, [Booth] is exonerated." *Id.* (emphasis added). In that case, "diametrically opposed summary judgment affidavits" prevented the Fifth Circuit from resolving the qualified immunity issue, and the case was remanded for trial. *Id.*

In this case, there is no doubt that it was at clearly established that Roy could protest, picket, and otherwise engage in First Amendment activities in the public forum, i.e., the City sidewalks.

It is equally without dispute that Sergeant Booth may issue a citation and summons to Roy if Roy violated the Ordinance. However, was Sergeant Booth on fair notice that, under the totality of the circumstances, his issuance of a citation and summons to Roy would violate Roy's First Amendment rights?

The undisputed testimony is that Sergeant Booth took a firsthand complaint from an alleged victim, Falcon, who told Booth that "a gentleman followed her across the street and was saying things to her, and he was walking real close to her and his behavior scared her." [Doc. No. 32-3, Sergeant Booth Depo., p. 13]. Sergeant Booth observed that Falcon was "scared," "her hands were shaking a little bit," she had a "really scared look on her face," and she "might've had tears in her eyes" when she reported the alleged crime. [Doc. No. 32-3, Sergeant Booth Depo., pp. 34-35]. Falcon pointed out Roy as the perpetrator. [Doc. No. 32-3, Sergeant Booth Depo., p. 36]. While Falcon said that the words Roy used "offended" her, Sergeant Booth testified that he would not have issued a summons for merely offensive words. Sergeant Booth then spoke with Roy. While the parties dispute what was said in that conversation, the Court has already recognized that Roy did not admit or deny the allegations against him. [Doc. No. 33, p. 12].

While Roy now denies the allegations against him and has been found not guilty by the city court judge and Falcon has since recanted her identification of him, these factual issues do not affect Sergeant Booth's entitlement to the qualified immunity defense. The Court views the facts in the light most favorable to Roy on summary judgment, but it also considers only those facts that were available to Sergeant Booth at the time he issued the citation and summons. As Defendants point out, there is no suggestion that Sergeant Booth knew that Roy did not commit the alleged crime, had information suggesting that Roy did not commit the alleged crime, or had any reason to doubt the veracity of Falcon's complaint.

Both Defendants and Roy have cited the Court to a number of cases, but whether First or Fourth Amendment cases, none of them would have placed Sergeant Booth on fair notice on July 17, 2015, that his issuance of a summons and citation to Roy on the basis of the undisputed facts would violate Roy's First Amendment rights. The Court need not determine whether Roy's alleged statements to Falcon constituted "fighting words" because this is not a case where Sergeant Booth acted only on the basis of Roy's words. Nor is this a case where Falcon complained about Roy when he was merely "peacefully expressing" views in a public form that were contrary to others in the community. *Cf. Cox v. State of La.*, 379 U.S. 536, 551 (1965). Rather, Sergeant Booth issued a citation and summons to Roy after observing Falcon's demeanor and physical manifestations and Roy's reported actions in following Falcon and walking closely to her. Sergeant Booth issued a citation to Roy for disturbing the peace based upon Falcon's complaint to him, in which she said Roy followed her across the street, called her names, and scared her. Falcon's complaints were corroborated by Falcon appearing scared and by her direct identification of Roy. Sergeant Booth did not issue a citation to Roy for preaching in a public forum. Viewed from the standpoint of an objectively reasonable police officer, Booth had probable cause, and is entitled to qualified immunity.

Accordingly, Defendants' motion for reconsideration is GRANTED, and Roy's § 1983 claims against Booth in his personal capacity for violations of Roy's First Amendment rights and damages are DISMISSED WITH PREJUDICE based on qualified immunity.

### C. Official Capacity Claim against Sergeant Booth

Claims against Booth in his official capacity are claims against the City. *See Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978) (Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer

is an agent.").   As the Court previously determined that Roy has not established *Monell* liability against the City, there can be no official capacity claim against Sergeant Booth as well.   To the extent that the previous Judgments in this case did not address this claim, the Court will include the dismissal of this claim for clarification.

D.     Trial

In ruling on Booth's qualified immunity defense, the Court has concluded, as a matter of law, that he reasonably believed he had probable cause to issue a citation and summons to Roy. However, Roy also asserted claims for injunctive and declaratory relief and attorney's fees and costs which remain pending.   He is not entitled to a jury trial on these remaining claims. Accordingly, the Court, *sua sponte*, strikes the jury demand and converts this matter to a bench trial to be held on the same date and time previously set.   The Court will take all evidence and argument at that time.

III.     CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration, as set forth in their pre-trial memoranda [Doc. Nos. 51 & 56] is GRANTED.   To the extent that Defendants move for reconsideration of the Court's denial of summary judgment on Sergeant Booth's qualified immunity defense, the motion is GRANTED, and Roy's § 1983 claims against Booth in his personal capacity for violations of Roy's First Amendment rights are DISMISSED WTH PREJUDICE.   The Court strikes Roy's jury demand and converts this matter to a bench trial to be held on the same date and time previously set.

MONROE, LOUISIANA, this 1st day of August, 2018.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE