**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **CLARENCE DEAN ROY** | **CIVIL ACTION NO. 16-1018** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITY OF MONROE AND JAMES BOOTH** | **MAG. JUDGE KAREN L. HAYES** |

**OPINION**

  This is a civil action brought by Plaintiff Clarence Dean Roy ("Roy") on July 11, 2016, against Defendants City of Monroe ("City") and Sergeant James Booth ("Sergeant Booth"), asserting claims that the City's disturbing the peace ordinance, on its face and as applied, violated his rights of freedom of speech and free exercise of religion under the First Amendment, as applied through the Fourteenth Amendment; that the City's Ordinance, policies, and practices violated his due process rights under the Fourteenth Amendment; that Defendants' actions constitute malicious prosecution in violation of the Fourth Amendment; and that Sergeant Booth's actions constitute false arrest in violation of the Fourth Amendment. [Doc. No. 14]. He sought declaratory and preliminary and permanent injunctive relief, an award of nominal or compensatory damages, and attorney's fees and costs.

  In prior rulings of the Court, Roy's claims were dismissed except for his request for declaratory and injunctive relief against Defendants and his request for attorney's fees and costs based on alleged violations of his First Amendment rights.[1]

---

[1]On October 19, 2017, Judge Robert G. James, then presiding, issued a Ruling and Judgment [Doc. Nos. 33 & 34] dismissing Roy's claim that the Ordinance is unconstitutional on

A bench trial was held in this matter August 27, 2018. The Court took the matter under advisement. The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

## I. FINDINGS OF FACT

The City's public streets, public sidewalks, and public rights-of-way are traditional public forums.

Roy is a Christian who describes his beliefs as "full gospel." Accompanied by his wife and others, he has often preached near the intersection of Pine and Third Streets in Monroe, Louisiana. He intends to continue to engage in expressive activity, including expressing religious, political, and social speech, within the City's public streets, public sidewalks, and public rights-of-way.

The City adopted the City of Monroe Code ("the Code"), which contains the City's Charter and the general ordinances of the City. The Code states in Sec. 12-153:

(a) It shall be unlawful to commit an act of disturbing the peace.

(b) Disturbing the peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public, or create any dangerous

---

its face and his municipal claim against the City. After giving notice, Judge James also *sua sponte* dismissed Roy's claims of malicious prosecution and false arrest. [Doc. Nos. 37 & 38]. Judge James left pending for trial Roy's claims against Sergeant Booth in his individual capacity, his claims for declaratory and preliminary and permanent injunctive relief, and his claim for attorney's fees and costs.

However, on August 1, 2018, the Court issued a Ruling [Doc. No. 62] and Judgment [Doc. No. 63],dismissing all claims against Sergeant Booth in his individual capacity and, to the extent necessary, clarifying that the claims against him in his official capacity were previously dismissed. The Court further converted this matter to a bench trial on the issue of whether Roy is entitled to declaratory and permanent injunctive relief and attorney's fees and costs.

or violent conditions:

(1) Engaging in a fistic encounter; or

(2) Using profane or threatening language or making obscene remarks, gestures, or indecent proposals to or toward another which in the manner uttered has a tendency to incite an ordinary addressee to violent retaliatory action and a breach of the peace; or

(3) Appearing in an intoxicated condition; or

(4) Engaging in any act in a violent and tumultuous manner by any three (3) or more persons; or

(5) Holding of an unlawful assembly; or

(6) Interruption of any lawful assembly of people.

Disturbing the peace shall also include the commission of any act other than that permitted as an exercise of free speech or free assembly guaranteed by the constitutions of the United States and the State of Louisiana, in such a manner as to disturb or alarm the public, or make such a disturbance imminent, or to provoke another or other to retaliatory action or violence.

(Code 1958, § 10-27; Ord. No. 7087, 9-11-79).

On July 15, 2017, Roy; his wife, Trish Roy; Sarah Lyde ("Lyde"); and Willard Manning ("Manning") were present in the area of north Third Street, between Pine and Olive Streets. There were three commercial establishments in that area: Corner Bar; Club Neat; and Live Oaks Ballroom and Lounge.

The Corner Bar is known as a gathering spot for homosexuals. Roy believes that homosexuality is a sin. He preaches against homosexuality, as well as drinking alcohol, the use of drugs, fornication, and other topics. *Id.* at ll. 13-14. Roy and others with him were engaged in expressive activity by speaking about religious, political, and social issues while on the City's sidewalks. On this night, they gathered at a telephone pole across the street from the Corner Bar. Roy was wearing an orange jump suit to demonstrate that he is a "prisoner of Christ" and to pose

the questions to others, "Whose prisoner are you?". At various times, he was also carrying a six-foot cross made of cedar 4 x 4s. He normally approaches people and says something short to "startle" them or "stop" them. He cannot "afford to" be concerned about other people's feelings because it might alter his message. Roy tells people that they are "going to Hell," uses the terms "homosexual" and "whore," and will tell people that "their father is the devil." He raises his voice, shouts, and uses "strong Biblical language" to convey his message. His wife, Trish, has heard him refer to women as "little lesbo," although Lyde has not. During the time Roy and Manning preached, Lyde and Trish Roy remained across the street and prayed.

At some point, Manning crossed the street and was in the public area in front of the Corner Bar. There was an incident between Manning and the owner of the Corner Bar. According to Roy, the bar owner began pouring beer on the sidewalk and "hugging" Manning. Roy said for someone to call the police. It is unclear who called, but the Monroe Police Department received a complaint about a disturbance in the area of north Third Street between Pine and Olive Streets.

Several Monroe Police Department officers responded to the complaint. After more than four Monroe Police Department officers had already arrived, Sergeant Booth arrived at the scene of the complaint. Sergeant Booth parked his patrol cruiser in front of Corner Bar, parallel to the front entrance, facing south. For about five minutes, Sergeant Booth sat in his cruiser and observed the scene. He was working in a supervisory capacity that night and wanted to ensure that the other officers were safe.

During the time that Monroe Police Department officers were investigating the complaint, a patron at one of the commercial establishments, Jessica Falcon ("Falcon") was present in the area with her friend, Brooke Wood. Falcon's vehicle was parked across the street from the Corner Bar, parallel to Sergeant Booth's patrol cruiser.

4

Falcon approached Sergeant Booth and made a complaint that a man followed her to her vehicle and said certain things to her. She then identified Roy as the man who followed her. Sergeant Booth described Falcon as crying, "visibly upset," and "afraid of" Roy.

Sergeant Booth called Roy over. Roy readily came to Sergeant Booth. However, other than to explain that he was "preaching," not "protesting," Roy never denied the incident. Sergeant Booth only spoke with Falcon and Roy about Falcon's complaint and did not see the encounter himself. No other officer saw the encounter either.

While Sergeant Booth was on the scene, Roy remained in roughly the same area near the front of a detail shop next to the Corner Bar, which was directly in front of Sergeant Booth's patrol cruiser, until Sergeant Booth called him over. Roy's wife, Trish, and Lyde deny that Roy followed Falcon.

Sergeant Booth looked at the ordinances and determined that Roy's alleged conduct was a violation of Section 12-153, Disturbing the Peace ("the Ordinance"). Sergeant Booth issued a summons and citation to Roy for a violation of the Ordinance. Specifically, Sergeant Booth believed that Roy violated Section 12-153(b)(2), which prohibits "[u]sing profane or threatening language or making obscene remarks, gestures, or indecent proposals to or toward another which in the manner uttered has a tendency to incite an ordinary addressee to violent retaliatory action and a breach of the peace," and the "catch all" provision of Section 12-153, which indicates that disturbing the peace "include[s] the commission of any act other than that permitted as an exercise of free speech or free assembly guaranteed by the constitutions of the United States and the State of Louisiana, in such a manner as to disturb or alarm the public, or make such a disturbance imminent, or to provoke another or other to retaliatory action or violence."[2]

---

[2] The parties stipulated to Sergeant Booth's reliance on these two provisions. During his

After issuing the summons and citation to Roy, Sergeant Booth prepared a probable cause narrative, which states:

> On 7-17-2015 at approx 2247 hours I Sgt. Booth, was in the 500 Blk of North 3rd Street dealing with a distance [sic]. There was [sic] group of people outside Club Neat and the Connor[3] Bar preaching at the customers. While there I was approached by Jessica N. Falcon. Jessica stated while she was crossing the street from Club neat to The Connor Bar a whi[t]e male wearing an orange jump suite [sic] car[rying] a large wooden cross Followed [sic] her across the street. Jessica stated the man called her a homosexual and because of this she was going to hell. Jessica also stated the man told her that her father was the devil. Jessica stated this offended her and it scared her the way he was following her across the street. Jessica pointed out the suspect to me. The suspected was id[ed] as Clarence D. Roy. Roy told me he was not protesting but preaching. Roy was issued a summon[s] (27563) for disturbing the peace.

[Doc. No. 23-3, Exh. 2].

Prior to July 17, 2015, individuals in the area had complained to Monroe Police Department officers about Roy and others with him. On other occasions, Monroe Police Department Officers had also responded to calls in this area related to Roy or those with him, but no formal complaints were ever lodged with Sergeant Booth before this date. Sergeant Booth had never cited Roy for any offense prior to this date. Roy has never been arrested while preaching at this or any other location.[4]

Roy was indicted by Bill of Information for violation of the Ordinance in Monroe City Court on July 22, 2015. On April 11, 2016, following a bench trial, the city court judge ruled

---

testimony at trial, Sergeant Booth indicated that he believed that Roy's words and actions could "incite" a reaction.

[3]The "Connor" bar refers to the Corner Bar.

[4]Years ago, he was issued a citation when preaching on Desiard Street for blocking the sidewalk, paid a $50 fine, and was on probation for a year.

that the City had not proven its case against Roy beyond a reasonable doubt and found him not guilty.

Roy and others have continued preaching in the same area after this incident without interference by the Monroe Police Department. They have never been arrested, summonsed, or threatened with arrest or summons. In the past few months, both The Corner Bar and Live Oaks have closed, but Roy intends to continue preaching there.

Sergeant Booth has retired from the Monroe Police Department and now works as an investigator for the District Attorney's Office in the Fourth Judicial District. He has no intention of ever returning to work for the Monroe Police Department because it would affect his retirement, and he will not apply for the position of Police Chief if it becomes available.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 because Roy alleged violations of his First Amendment rights through the Fourteenth Amendment and brought suit for these alleged civil rights violations through 42 U.S.C. § 1983.

### B. Mootness

Defendants move to dismiss the remaining claims against Sergeant Booth under the Article III mootness doctrine, contending that the Court lacks subject-matter jurisdiction over these claims. Because Defendants have raised a jurisdictional issue, the Court must address it first.

"In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege

facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). Having reviewed the evidence on this issue, the Court finds that Roy cannot meet this burden with regard to the claims against Sergeant Booth.

Sergeant Booth is no longer employed by the City and testified credibly that he has no intention of returning. He explained that he has obtained employment as an investigator for the District Attorney and that he intends to remain in the position. Under both direct and cross-examination, Sergeant Booth was clear that there is not a substantial likelihood of his return to work for the City, either as an officer, or even as Chief of Police. He explained further that, if he returned to work as a police officer, he would have to start over in patrol, and it would negatively impact his retirement. He also explained that he has no interest in the position of chief of police, and he could not be appointed to the position because he will not apply. Because there is no substantial likelihood of Sergeant Booth's re-employment as a City police officer or as Chief, there is also no substantial likelihood that he would cause Roy to suffer a constitutional injury in the future. Accordingly, the Court has no subject-matter jurisdiction over the claims against Sergeant Booth. Defendants' oral motion to dismiss the claims against Sergeant Booth is GRANTED.

Nevertheless, Roy's claims against the City for injunctive and declaratory relief remain, based on Sergeant Booth's actions in his official capacity. The Court now turns to those claims.

### C. First Amendment Claims

As an initial matter, the Court finds that Roy's First Amendment rights of freedom of speech and freedom of religion are implicated in this case. *See McDaniel v. Paty*, 435 U.S. 618,

625 (1978) ("[T]he right to the free exercise of religion unquestionably encompasses the right to preach, proselyte, and perform other similar religious functions."); *Snyder v. Phelps*, 562 U.S. 443, 453-55 (2011) (after examining content, form, and context, Supreme Court found that First Amendment protection on free speech included religious group's protest on homosexuality as a matter of public concern); *see also United States v. Grace*, 461 U.S. 171, 176 (1983) ("There is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment.");

The City and Booth[5] are prohibited from violating Roy's constitutionally protected rights. The First Amendment to the United States Constitution states that "Congress . . . shall make no law . . . prohibiting the free exercise [of religion], or abridging the freedom of speech, . . .or the right of the people peaceably to assemble." U.S. CONST. amend. I. The First Amendment is made applicable to the states and their subdivisions through the Fourteenth Amendment. *See* U.S. CONST. amend. XIV, § 1; *see also, e.g., Virginia v. Black*, 538 U.S. 343, 358 (2003); Lovell v. City of Griffin, 303 U.S. 444, 450 (1938).

However, Roy's exercise of his First Amendment rights is not absolute. The First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired. *Heffron v. International Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). Similarly, an individual's religious beliefs do not excuse him from compliance with an otherwise valid law prohibiting conduct that the State, or in this case, the

---

[5]While there are no remaining claims against Booth, the Court's analysis of the remaining claims against City turns on Sergeant Booth's actions. Therefore, the Court will refer to both, even though the City is the only remaining Defendant in fact.

City, is free to regulate. *See, e.g., Employment Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878-79 (1990); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) ("[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.").[6]

In the present case, the Court previously ruled and reaffirms its ruling that the Ordinance is constitutional on its face. The Ordinance is of general applicability, and there is no evidence that it was adopted because of the City's disagreement with any particular message or viewpoint or to target First Amendment speech or expressive activities. Nor does the Ordinance seek to regulate the time, place, or content of speech or expressive activities. Rather, this was a neutral disturbing the peace ordinance, generally applicable to persons within the City's and Sergeant Booth's jurisdiction.[7]

Roy's evidentiary presentation focused on whether he actually committed a violation of the Ordinance. However, that is not the issue before the Court. Rather, the first issue is whether

---

[6]In contrast, "a law targeting religious beliefs as such is never permissible[,]" and "if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral, . . . it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Church of the Lukumi Babalu Aye,* 508 U.S. at 533 (citations omitted).

[7]Therefore, cases addressing laws which seek to regulate time, place, and manner of expressive activity are inapplicable. Notably, however, "[t]he principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Hill v. Colorado*, 530 U.S. 703, 719 (2000). "The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Sergeant Booth had probable cause to issue a summons to Roy for a violation of the Ordinance.

1.  **Probable Cause**

The Fifth Circuit has cautioned that "[c]ourts need to be alert to arrests that are prompted by constitutionally protected speech." *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) (citations omitted).

> Conversely, when a person's conduct gives an officer probable cause to believe that she is guilty of a crime, that person does not taint a proper arrest by contemporaneously shouting "police officers are corrupt." Probable cause is an objective standard. If it exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment.[8] Of course, this is nothing more than a recognition that "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent" of the officer. *Whren v. United States*, 517 U.S. 806, 814, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).[9]

*Mesa*, 543 F.3d at 273; *see also Buehler v. City of Austin*, No. A-13-CV-1100-ML, 2015 WL 737031, at \*9 (W.D. Tex. Feb. 20, 2015), *aff'd sub nom. Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548 (5th Cir. 2016) ("Because Buehler's constitutional claims arise out of allegedly unlawful arrests, all of Buehler's constitutional claims require an absence of probable cause to support his arrests.") (citing *Russell v. Altom*, 546 F. App'x 432, 436 (5th Cir. 2013);

---

[8]In *Mesa*, the Fifth Circuit reversed the grant of summary judgment on qualified immunity grounds. In so doing, however, the Fifth Circuit found that there were genuine issues of material fact for trial on whether there was a violation of Mesa's First Amendment rights, among others, and, thus, never reached the "clearly established" prong of the test. Thus, the analysis is applicable herein.

[9]Roy has argued that citation to and reliance on Fourth Amendment cases is inappropriate because this is a First Amendment case. He is correct, of course, that the Court previously found that there were no Fourth Amendment concerns here. That ruling, however, is based on Sergeant Booth's decision to issue a summons, instead of arresting Roy. The fact that he chose to impose a lesser burden on Roy with issuance of a summons does not prevent the Court from using clearly applicable Fifth Circuit cases to analyze Sergeant Booth's conduct.

*Mesa*, 543 F.3d at 273); *see generally Izen v. Catalina*, 398 F.3d 363, 369–70 (5th Cir. 2005) ("Even assuming arguendo that Izen could create a triable issue of fact as to the remaining elements of the[First Amendment] retaliatory prosecution claim, because he is unable to create a triable issue of fact as to whether probable cause existed when he was indicted, the district court thus properly granted summary judgment to Catalina."). The "probable-cause analysis focuses on the 'totality of the facts and circumstances within a police officer's knowledge at the moment of arrest.'" *Carthon v. Prator*, 408 F. App'x 779, 783 (5th Cir. 2010) (quoting *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006)).

The Court has considered the evidence at trial and the credibility of the witnesses and finds that Sergeant Booth had probable cause to issue a summons to Roy. The City asserts that Sergeant Booth had probable cause to issue a summons to Roy for a violation of either of two provisions of the Ordinance:

> (1) Section 12-153(b)(2), which prohibits "[u]sing profane or threatening language or making obscene remarks, gestures, or indecent proposals to or toward another **which in the manner uttered has a tendency to incite an ordinary addressee to violent retaliatory action and a breach of the peace**"; or
>
> (2) The residual or catch all provision of Section 12-153, which prohibits "the **commission of any act other than that permitted as an exercise of free speech** or free assembly guaranteed by the constitutions of the United States and the State of Louisiana, **in such a manner as to disturb or alarm the public, or make such a disturbance imminent, or to provoke another or other to retaliatory action or violence**."

Monroe City Code Section 12-153 (emphasis added).

Roy presented his own testimony and that of his wife and Lyde to support the assertion that he never followed Falcon and that, if he followed her, Sergeant Booth and others should have seen him. He further contends that Sergeant Booth performed an inadequate investigation

12

because he failed to question other witnesses, and he did not discuss the incident with Roy.

However, Sergeant Booth testified that it was his understanding that the incident with Falcon occurred before he arrived. When Falcon approached him, Sergeant Booth got out of his patrol cruiser to talk with her. She complained that a man she identified as Roy had followed her across the street[10], called her a "little lesbo,"[11] and said that her "father is the devil" and that she was "going to Hell." Sergeant Booth testified that Falcon was crying, visibly upset, and he emphasized multiple times during his testimony that she was "afraid" or "scared" of Roy. Sergeant Booth believed Falcon's account and believed that Roy was trying to get a "reaction" from her. At that point, he thought that Roy might have possibly violated two of the City's ordinances.

Sergeant Booth then approached Roy and asked him to come to his patrol cruiser. Sergeant Booth advised Roy of his rights and explained what Falcon said, but Roy responded only that he was "preaching, not protesting."[12] Although Sergeant Booth would have liked to interview Falcon's friend, she left before he could, and he believed that Falcon's credible

---

[10] At the time of the event, Sergeant Booth indicated that Falcon stated that Roy was following her to her car. At trial, Sergeant Booth testified that she said that he followed her across the street, going from one bar to another. Regardless, his testimony was consistent that Falcon indicated that Roy had followed her across the street, regardless of her destination.

[11] During his testimony, Sergeant Booth sometimes used the term "homosexual" and sometimes "little lesbo," but, at any rate, he consistently testified with his narrative from that night that Roy had referred to Falcon's sexuality in some way.

[12] Although he testified at trial that Sergeant Booth never told him why he was called over to the cruiser, the Court does not credit that testimony. Clearly, Roy was responding to some discussion with Sergeant Booth in order to make any statement at all.

account was sufficient to constitute a violation of the Ordinance.[13] Particularly, he explained that Roy's conduct "scared" Falcon and that "when somebody gets scared, you never know what they're going to do." He issued the summons to Roy, who again stated only that he was preaching, not protesting.

Based on the totality of the circumstances at the time of the incident, the Court finds Sergeant Booth had probable cause to issue a summons to Roy for a violation of the Ordinance under either provision. Sergeant Booth's testimony was credible and consistent with the probable cause narrative prepared on the night of the incident. Roy, Trish Roy, and Lyde all admitted that Roy yells, gets loud, is forceful, and/or is aggressive when he is preaching or delivering his message. Trish Roy admitted that he has used the term "little lesbo," and all three admitted that Roy has made some type of reference to a person's father being the devil or "the father" being the devil. Finally, from Sergeant Booth's view, Roy did not deny the encounter happened. Given Roy's admitted method of delivering his message loudly, the fact that Falcon identified him (when he was dressed in an easily identifiable orange jumpsuit), her demeanor while describing the encounter, and Roy's lack of denial,[14] the Court finds that a reasonable person could conclude that Roy was committing the offense of disturbing the peace in violation

---

[13] Sergeant Booth considered whether Roy's actions constituted simple assault, but believed the disturbing the peace ordinance "fit the situation better."

[14] Whether the incident actually occurred before Sergeant Booth arrived or not, whether Roy actually committed the violation, and whether Roy exercised his Fifth Amendment right not to respond are all irrelevant. The Court's consideration is limited to the facts and circumstances before Sergeant Booth at the time he decided to issue the summons. There is no evidence that Sergeant Booth testified falsely that he believed that the incident occurred earlier, that he knew Roy had not followed Falcon, or that he knew Roy was not responding in an attempt to assert his Fifth Amendment rights.

14

of the Ordinance.[15]  In the words of the Fifth Circuit, "[p]robable cause requires nothing more." *Carthon v. Prator*, 408 F. App'x 779, 783 (5th Cir. 2010).  Because Sergeant Booth had probable cause to find that Roy violated the Ordinance, Roy cannot establish a violation of his First Amendment speech and free exercise rights against the City.

### 2.     Motivation for Issuance of the Summons

Alternatively, even if Sergeant Booth lacked probable cause to issue a summons to Roy, the Court finds that Roy has otherwise failed to establish a violation of his First Amendment speech and free exercise rights.  To establish a First Amendment retaliation claim, a plaintiff must demonstrate that he "engaged in conduct protected by the First Amendment" and that "the government took action against [him] because of that protected conduct."  *Kinney v. Weaver*, 367 F.3d 337, 358 (5th Cir. 2004) (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir.1996)).  Roy does not simply allege that Sergeant Booth lacked probable cause to arrest him, but Sergeant Booth, "without probable cause, arrested Plaintiff based upon the content of his protected speech."  [Doc. No. 59, p. 6].

However, the undisputed evidence at trial shows that Roy has been preaching within the City limits at this and other locations for many years, that even after the issuance of the summons he was not made to leave the area, that neither Sergeant Booth nor any other Monroe Police officer has ever arrested him or issued a summons to him before (except for one unrelated incident on a different street), and that he has continued to preach in the area since this incident

---

[15]*See State v. Jordan*, 369 So.2d 1347, 1350 (La. 1979) (Interpreting the phrase "in such a manner as would foreseeably disturb or alarm the public" to apply only to "'conduct which is violent or boisterous in itself, or which is provocative in the sense that induces a foreseeable physical disturbance.'").

without interference. Even if the Court were to credit Roy's testimony that Sergeant Booth commented that "his church" does not protest like Roy, this one statement is insufficient to show that Sergeant Booth took action against him because of his speech. Sergeant Booth credibly testified that he issued the summons only after considering the entire circumstances and a review of the Ordinance. Roy has not demonstrated that any other officer or agent of the City exhibited animus towards him, his speech, or his free exercise of his religion. Thus, even if the Court were to assume, *argudendo*, that probable cause was lacking, Roy has not established that he was subjected to retaliation.

### 3. Injunctive and Declaratory Relief

Finally, in the further alternative, Roy cannot establish that he is entitled to the relief he seeks. Roy seeks both a declaratory judgment and a permanent injunction against the City. Declaratory judgment "is a proper way for individuals to proceed to ensure that their constitutional rights are protected." *See Brister v. Faulkner*, 214 F.3d 675, 681 (5th Cir. 2000) (citing *Steffel v. Thompson*, 415 U.S. 452 (1974)). To assert a claim under the Declaratory Judgment Act, a plaintiff must show that there is "substantial and continuing controversy" between the parties, the dispute will continue, and "either continuing harm or a real and immediate threat of repeated injury in the future." *Sowers v. Darby*, No. 2:07CV11-SA-SAA, 2009 WL 742730, at *5 (N.D. Miss. Mar. 17, 2009). Declaratory relief is purely discretionary, and courts have the power to dismiss a claim for declaratory relief where it is duplicative of claims asserted in a lawsuit. *Ladd v. Colonial Sav., F.A*, No. 3:13-CV-1817-P, 2014 WL 1393038, at *5 (N.D. Tex. Apr. 10, 2014).

"To obtain permanent injunctive relief, a plaintiff must demonstrate: '(1) that [he] has

16

suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) (quoting *eBay, Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006)); *see also Causeway Med. Suite v. Ieyoub*, 905 F. Supp. 360, 366 (E.D. La. 1995), *aff'd,* 109 F.3d 1096 (5th Cir. 1997) (citing *Dye v. McKeithen*, 856 F.Supp. 303, 305 (W.D. La.1994) (citing *Newman v. State of Alabama*, 683 F.2d 1312, 1319 (11th Cir. 1982), cert. den., 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983) ( "To be entitled to a permanent injunction for a constitutional violation, a plaintiff must show (1) that there has been such a violation, (2) the existence of continuing irreparable injury if the injunction does not issue, and (3) the lack of an adequate remedy at law.")). With regard to the continuing nature of the injury, the moving party need only show that "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

In this case, however, even if Roy could meet his burden of establishing a constitutional violation, he cannot show that there is more than a mere possibility of a recurrent or continuing violation. As the Court previously concluded, Booth is no longer employed by the City, and testified credibly that he has no intention of returning. There are no other incidents before or since July 17, 2015, to indicate that Monroe Police Officers, other than Booth, have or will interfere with Roy's First Amendment rights. Accordingly, Roy cannot meet his burden to support the issuance of a declaratory judgment in the Court's discretion or the issuance of a

17

permanent injunction.

## III. CONCLUSION

For the foregoing reasons, the Court finds that the claims against Sergeant Booth are moot, and Defendants' motion to dismiss those claims is GRANTED. The Court finds further that Roy cannot prevail on his claims because there was probable cause for his arrest, he cannot prove a retaliation based on his First Amendment rights, and there is no continuing irreparable harm to support issuance of a declaratory judgment or an injunction. Accordingly, Judgment shall be entered in favor of the City and against Roy, and that the lawsuit is DISMISSED WITH PREJUDICE, each party to bear its own costs.

MONROE, LOUISIANA, this 29th day of August, 2018.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE